**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 07-30024 |
| ) | |
| LEAMON A. HATFIELD, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Background and Introduction

Defendant Leamon A. Hatfield was indicted by the United States on February 23, 2007 for conspiracy to unlawfully enter pharmacies with the intent to steal controlled substances in violation of 18 U.S.C. § 2118(b) and (d). A jury trial commenced October 29, 2007, and the jury found the Defendant guilty on November 2, 2007. Hatfield timely moved for a new trial,[1] raising six issues. First, he argues that the Court erred in denying his motion for mistrial. Second, he argues that the Court erred in permitting certain hearsay statements over counsel's objections. Third, Hatfield argues that the Court erred by not instructing the jury that venue is an element of the offense. Fourth, he argues that the jury verdict was against the manifest weight of the evidence. Fifth, he argues that the Court erred in denying his motion for acquittal, both at the close of the

---

[1] A new trial motion "grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period." ***Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam).** *Accord **United States v. Ogle*, 425 F.3d 471, 476 (7th Cir. 2005).** Hatfield's motion was filed on November 9, 2007, five business days after he was found guilty.

-1-

Government's case and at the close of Defendant's case. Finally, Hatfield argues that the Government committed a violation of **Brady v. Maryland, 373 U.S. 83 (1963)**, by not fully disclosing its knowledge of Rex Hatfield's status as an FBI informant.

As the parties have fully briefed these issues (see Docs. 94, 98, 104), the Court now rules on the instant motion for new trial. For the reasons stated below, the Court **DENIES** Hatfield's motion for new trial.

### B. Analysis

**FEDERAL RULE OF CRIMINAL PROCEDURE 33** governs motions for new trial. Rule 33 provides that, upon a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." As explained by the United States Court of Appeals for the Seventh Circuit, "A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." ***United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (citing *United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996))**.[2]

The district court may consider the credibility of the witnesses in making this determination. ***United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999).** But the district court may <u>not</u> reweigh the evidence or set aside the verdict just because the court "feels some other result would be more reasonable." ***United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989).** Rather, the evidence must preponderate so heavily against the verdict that it would be a miscarriage

---

[2] A different standard governs new trial motions based on newly-discovered evidence. As to such motions, a defendant must establish that the evidence: (1) came to his knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005); *United States v. Ryan*, 213 F.3d 347, 352 (7th Cir. 2000).

of justice to let the verdict stand.  *Id.*

Additionally, the Seventh Circuit has warned that when considering a motion for new trial, "Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'" *Id.*  **Accord *United States v. DePriest*, 6 F.3d 1201, 1216 (7th Cir. 1993) (explaining that motions for new trial must be approached with great caution, and that judges should be wary of second-guessing determinations made by juries).**

1.  Motion for Mistrial

First, Hatfield argues that the Court erred in denying his motion for a mistrial.  On the second day of trial, October 30, 2007, Assistant United States Attorney Robert Garrison called Officer Maria Cutshaw to testify.  Officer Cutshaw testified that she was on duty for the Sevierville, Tennessee Police Department on January 20, 2002 and was dispatched to a local pharmacy after receiving a report that a burglary was in progress.  Upon arrival, she found the back door of the pharmacy open and two Caucasian males in the process of burglarizing the pharmacy — Rex and Leamon Hatfield.  She and other officers arrested the suspects, recovered wire cutters and prescription pill bottles from them, and found a police scanner nearby.

During direct examination, Mr. Garrison asked, "Did you take a statement from Leamon Hatfield?" to which Officer Cutshaw responded, "He did not make a statement."  **Rough Transcript, Oct. 30, 2007, pp. 103-04.**  At that point, defense counsel objected on the grounds that the testimony violated Hatfield's Fifth Amendment right against self-incrimination, moved to strike the testimony, and moved for a mistrial.  The Court took the motion for mistrial under advisement and granted the motion to strike.  In giving a curative instruction, the Court stated:

> Folks, there was a question and answer that was just asked and answered that you are not permitted to consider, so I am going to

> repeat it for you so that you know what you should not consider. Now there is some harm in that because I am repeating something you shouldn't consider. I am not trying to reinforce it but I want you to be certain what you cannot consider. The question and answer you cannot consider and should completely disregard and put totally out of your mind is as follows.
>> Question: And did you take a statement from Leamon Hatfield?
>> Answer: He did not make a statement.
>
> You must completely disregard that answer in this case.

*Id.* **at 105-06.** The undersigned Judge then asked the jury whether there was anyone who could not completely disregard the testimony, and no juror indicated that they were unable to disregard it.

After the United States rested its case on November 1, 2007, the Court heard additional argument on the motion for mistrial. Defense counsel cited ***Doyle v. Ohio*, 236 U.S. 610 (1976)**, and ***California v. Griffin*, 380 U.S. 609 (1965)**, for the proposition that commenting on a defendant's silence is a violation of his constitutional rights. **Rough Transcript, November 1, 2007, pp. 253-55.** The Government argued that the testimony involved an isolated and minor reference to the fact that Hatfield did not make a statement, such that any prejudice resulting therefrom was harmless because of other incriminating evidence regarding the event. This other evidence consisted of Officer Cutshaw's testimony that Hatfield was caught inside the pharmacy at the time of the burglary and a videotaped interview during which Hatfield admitted his involvement in the burglary, but claimed to have been acting at the direction of a government informant.

The Court denied the motion for mistrial on the grounds that Officer Cutshaw's answer would not deprive Hatfield of a fair trial. The Court reasoned that her answer, "He did not make a statement," was not a clear violation of his Fifth Amendment privilege, because it was a generic statement and did not convey the reason that Hatfield did not make a statement, nor did it explain whether he had been asked to do so. The Court also found that the subsequent instruction

cured any harm that may have been done by the testimony. Finally, the Court noted that on at least four occasions, the jury had been or would be instructed of Hatfield's absolute right not to testify and that they could not consider his exercise of that right in arriving at their verdict.

In the motion at hand, Hatfield argues that the Court erred in denying the motion for mistrial and again cites *Griffin* and *Doyle*. Though each of these cases stresses the importance of a defendant's Fifth Amendment right against self-incrimination, neither case is instructive here.

In *Doyle*, the defendant took the stand and told an exculpatory story for the first time. **236 U.S. at 611.** The trial court permitted the prosecution to cross-examine the defendant about the fact that he failed to tell this story to police at the time of his arrest. *Id.* The Supreme Court found that it was "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* **at 618.**

In *Griffin*, the state trial court instructed the jury that it could consider the defendant's failure to testify as tending to indicate the truth of matters about which he had knowledge if the defendant could "reasonably be expected to deny or explain" those facts. **380 U.S. at 610.** The prosecution also made multiple references to the defendant's failure to testify and suggested that the jury should draw an inference of guilt from that silence. *Id.* **at 610-11.** Under these facts, the Supreme Court found a violation of the Fifth Amendment and reversed Griffin's conviction. *Id.* **at 615.**

Nothing of the sort happened here. Contrary to the facts of *Doyle*, the prosecution here never insisted that an inference of guilt be drawn from the fact that the Defendant did not make a statement. In fact, Mr. Garrison supported the motion to strike the testimony and acknowledged the need to issue a curative instruction. And unlike *Griffin*, the Court gave no instruction indicating

that the jury could consider Hatfield's failure to testify at trial as an indication of guilt. To the contrary, the Court specifically instructed the jury that it could not make such an inference. Nor did the prosecution ever comment on Hatfield's decision not to testify. The only testimony that arguably implicated the Fifth Amendment was a single, minor answer given by Officer Cutshaw that Hatfield did not make a statement after his 2002 arrest. The undersigned Judge then explicitly told the jury that it "must completely disregard" the statement, and all jurors indicated that they could do so.

The fact that these cases are distinguishable, however, does not mean that the response elicited by the Government's question was permissible. Even where the prosecution does not directly suggest that a defendant's silence is evidence of guilt, there is a danger that the jury will draw prejudicial inferences from that information. As noted in *Griffin*, "[T]he Fifth Amendment, in its direct application to the Federal Government . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." **380 U.S. at 615.**

Though the question and answer were improper, their effect was harmless and they did not have a prejudicial impact on the jury's verdict. The Seventh Circuit recently provided five factors for determining whether an error is harmless:

> 1. The use to which the prosecution puts the post-arrest silence.
> 2. Who elected to pursue the line of questioning.
> 3. The quantum of other evidence indicative of guilt.
> 4. The intensity and frequency of the reference.
> 5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

*United States v. Jumper*, **497 F.3d 699, 706-707 (7th Cir. 2007).**

Applied here, it is clear beyond a reasonable doubt that any error was harmless.

There was a single, minor reference to Hatfield's post-arrest silence without elaboration. Defense counsel objected immediately, moved to strike, and moved for a mistrial. As explained above, the undersigned Judge then instructed the jury to disregard the statement, and all jurors indicated that they would do so. Throughout the case, the Court instructed the jury of Hatfield's right not to testify and instructed the jury not to consider Hatfield's exercise of that right as having any bearing on his guilt. Additionally, the Government produced a great deal of evidence implicating Hatfield as a member of the conspiracy, including extensive testimony from his co-conspirators. Finally, the jury viewed a videotaped statement by Hatfield, in which he discussed his involvement with the Sevierville burglary.

Accordingly, the Court properly denied the motion for mistrial, as the instruction to disregard the testimony was sufficient to protect Hatfield's rights. This and the quantum of other evidence against Hatfield clearly show that a new trial is not warranted on this issue, as the testimony did not contribute to the verdict.

2. Hearsay Statements

Second, Hatfield claims that the Court erred in allowing hearsay under the exception allowing for the admission of co-conspirator statements. In his motion, Hatfield does not specify which particular statements are objectionable. In his reply, Hatfield vaguely refers to the testimony of "all of the State's lay witnesses," and generally refers to Sheila Acklin's testimony that certain drugs had been acquired through burglaries in which Hatfield participated.

The lack of specificity in the motion makes it difficult to determine which particular statements Hatfield believes were improperly admitted. And as the Seventh Circuit has noted, this Court "need not try to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v.*

*Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

However, as to Acklin's testimony on October 31, 2007, the Court finds only one objection by defense counsel on this point. Mr. Garrison asked, "You said something I thought earlier about what Everly said about the source of the pills?" **Rough Transcript, Oct. 31, 2007, pp. 236.** Acklin answered, "He said that him and Leamon had been out to Illinois a couple of weeks before he came back out there to get me." *Id.* **at 236-37.** At that point, defense counsel objected on the grounds that the statement was hearsay and was not made in furtherance of the conspiracy. The prosecution replied that Everly Hatfield, an alleged co-conspirator, made the statement while the burglaries were in progress and while he was selling the pills from a hotel room. The Court overruled the objection, citing Federal Rule of Evidence 801(d)(2)(E).

**Rule 801(d)(2)(E)** states: "A statement is not hearsay if the statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Acklin testified as to a statement made by Everly Hatfield, a co-conspirator of the Defendant. The statement was made during the course of the conspiracy, because it was made in February 2004 and the indictment charges that the conspiracy existed through April 13, 2004.

The contested issue here, then, is whether the statement was made in furtherance of the conspiracy. The Defendant argues that the statement could not have been in furtherance of the conspiracy, because the statement referred to events that had already occurred. In support of his position, Hatfield cites *Crawford v. Washington*, **541 U.S. 36 (2004).** *Crawford* is not on point, however, as it does not discuss the applicability of Rule 801(d)(2)(E).

In *Crawford*, the Court examined whether a videotaped statement made by the Defendant's wife under police questioning was admissible where the declarant had exercised her

marital privilege to avoid testifying at trial. *Id.* **at 38-40.** The defendant objected on the grounds that the statement would violate his Sixth Amendment right to confrontation. *Id.* **at 40.** The state court applied a multi-factor test, found that her statement had "particularized guarantees of trustworthiness," and admitted the statement. *Id.* The appellate court reversed, applying the same test. *Id.* **at 41.**

The Supreme Court held that the reliability test was insufficient to protect the defendant's Sixth Amendment rights under the circumstances. The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In interpreting the meaning of the Clause, the Court noted the distinction between its applicability to testimonial statements versus non-testimonial statements:

> [By its terms, the Confrontation Clause] applies to "witnesses" against the accused — in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

*Crawford*, **541 U.S. at 51.**

Though the Court refused to comprehensively define "testimonial," it held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* **at 68.** However, where the statement offered is non-testimonial, the Court indicated that the law of hearsay governs its admissibility. *Id.*

Here, Everly Hatfield's out-of-court statement does not clearly fall within the coverage of *Crawford*'s holding, because it bears the mark of a non-testimonial statement — the "casual remark to an acquaintance" — rather than a testimonial statement. As such, *Crawford* is inapplicable and the only issue here is whether the statements were made in furtherance of the conspiracy as required by Rule 801(d)(2)(E).

The Seventh Circuit has explained that

> a wide range of statements qualify [as statements "in furtherance of a conspiracy"], "includ[ing] comments designed to assist in recruiting potential members, to inform other members about the progress of the conspiracy, to control damage to or detection of the conspiracy, to hide the criminal objectives of the conspiracy, or to instill confidence and prevent the desertion of other members."

***United States v. Skidmore*, 254 F.3d 635, 638 (7th Cir. 2001) (quoting *United States v. Johnson*, 200 F.3d 529, 532 (7th Cir. 2000)).** At a minimum, Everly Hatfield intended to update Acklin on the conspiracy's progress when he told her that the Defendant had helped obtain the drugs by burglarizing an Illinois pharmacy. Additionally, that statement could also have been intended to assure Acklin that the ongoing criminal activities of the group were being conducted with continued success. Therefore, the Court properly found by a preponderance of the evidence that the statement was made in furtherance of the conspiracy under Rule 801(d)(2)(E).

Even if the statement was not properly admitted, any error was harmless. Co-conspirators testified at length about their involvement with the Defendant in various pharmacy burglaries. Additionally, Acklin herself testified as to the Defendant's involvement in the conspiracy, including two trips to Oklahoma where she accompanied him for the purpose of committing pharmacy burglaries. *See* **Rough Transcript, October 31, 2007, at p. 223.**

Therefore, a new trial is not warranted on this issue because the testimony was

properly admitted, and even if there was any error, it did not contribute to the verdict.

3.  Venue as an Element of the Offense

Next, Hatfield argues that the Court should have instructed the jury that venue is an element of the offense.  Essentially, Hatfield argues that if the jury had been instructed that venue was an element of the offense, it would have found him not guilty because the only evidence that he committed a crime in this district was Sheila Acklin's testimony.

In support of this proposition, Hatfield points to **United States v. Tingle, 183 F.3d 719 (7th Cir. 1999)**, where the Seventh Circuit reversed the defendant's conviction due to improper venue.  *Tingle* is not on point, however, because the court found that venue was improper only as to the distribution charge — not the conspiracy charge. **Tingle, 183 F.3d at 728.**

Recently, the Seventh Circuit addressed the issue of whether a request to instruct the jury on venue should have been granted in **United States v. Muhammad, 502 F.3d 646, 655-57 (7th Cir. 2007).**  There, the court noted that a defendant is only entitled to a venue instruction where "venue is specifically at issue." **Id. at 655.**  The court further explained that "[e]ven if a defendant properly objects to venue, however, it does not become a fact question for the jury unless the defendant also places it in issue by establishing a *genuine* issue of material fact with regard to venue." **Id. at 656 (quoting *United States v. Perez*, 280 F.3d 318 (3d Cir. 2002)).**  In other words, "the defendant must, by his factual submissions, 'make venue a serious issue.'" **Id. (quoting *United States v. Marrinson*, 832 F.2d 1465, 1475 (7th Cir. 1987)).**

Hatfield was not entitled to a jury instruction on venue because he did not raise a genuine issue of material fact.  He presses the venue issue on the grounds that there was a lack of evidence that he personally committed a crime in this district.  This position, however, is based on

-11-

an incorrect statement of law: that venue only lies in this case if he personally committed an offense in the Southern District of Illinois.

>To the contrary, **18 U.S.C. 3237(a)** states:
>
>Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Where the charged offense is conspiracy, as it is here, venue is proper in any district where an overt act of the conspiracy took place. ***United States v. Ochoa*, 229 F.3d 631, 636 (7th Cir. 2000).** Moreover, "venue [is] proper against [the] defendant in [any] district where [a] co-conspirator carried out overt acts even though there was no evidence that the defendant had entered that district or that the conspiracy was formed there." *Id.* **at 646-47 (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281-82 (1999));** *see also United States v. Brown*, **739 F.2d 1136, 1148 (7th Cir. 1984) ("So long as an overt act in furtherance of the conspiracy is intended to have an effect in the district where the case is finally brought, venue is proper.").** In other words, the Government is not required to prove that Hatfield personally committed any crime in this district, but rather that Hatfield or one of his co-conspirators committed an overt act in furtherance of the conspiracy in this district. Thus, a jury instruction was not required.

As Hatfield has produced no statute to show that venue is an element of the offense charged in this case, the Government must establish venue only by a preponderance of the evidence. *Muhammad*, **502 F.3d at 652.** The Government clearly satisfied its burden here. There was ample evidence that the Southern District of Illinois was the site of numerous burglaries undertaken by Hatfield's co-conspirators, and Sheila Acklin testified that Hatfield himself was involved in Illinois

pharmacy burglaries. Therefore, the Government proved by a preponderance of the evidence that overt acts were committed in furtherance of this conspiracy within the Southern District of Illinois, and there was no genuine issue of material fact suggesting the contrary.

Accordingly, a new trial is not warranted on this issue.

4. Jury Verdict

Next, Hatfield argues that the jury's verdict was against the manifest weight of the evidence. In evaluating this claim, the Court determines whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***United States v. Harris*, 325 F.3d 865, 868 (7th Cir. 2003) (citations omitted).**

Hatfield was charged with conspiracy to unlawfully enter pharmacies with the intent to steal controlled substances. In order to prove that a conspiracy existed in violation of 18 U.S.C. § 2118(d), the Government had to prove beyond a reasonable doubt (1) that Hatfield and at least one other person agreed to violate § 2118(b), (2) that Hatfield knowingly and intentionally joined in the agreement, and (3) that at least one conspirator committed an overt act in furtherance of the conspiracy. **18 U.S.C. § 2118(d);** ***United States v. Griffin*, 493 F.3d 856, 862 (7th Cir. 2007).** In order to establish that Hatfield conspired with others to violate § 2118(b), the Government had to prove that Hatfield agreed to (1) enter, (2) without authority, (3) the business premises or property of a person registered with the Drug Enforcement Administration (DEA), (4) with the intent to steal a material or compound containing a quantity of a controlled substance. **18 U.S.C. § 2118(b).**

The Government produced a great deal of evidence that the Defendant knowingly planned and actively participated in pharmacy burglaries in various states with his brothers, Rex and

Everly Hatfield, Sheila Acklin, Pamela Hatfield, and others. Testimony was introduced to establish that pharmacies burglarized by members of the conspiracy were registered with the DEA. There was also testimony that the Defendant and his brothers sold a variety of controlled substances to drug users, including oxycodone, hydrocodone, morphine, fentanyl, methadone, and amphetamines. Additionally, there was evidence that the Defendant and others received Western Union wire transfers from co-conspirators to fund the conspiracy's operations.

In light of this and other evidence, and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the Defendant committed the essential elements of the crime beyond a reasonable doubt. Therefore, a new trial is not warranted.

5. Motion for Acquittal

Hatfield also argues that the Court's denial of his motion for acquittal, both at the close of the Government's case and at the close of the Defendant's case, was against the manifest weight of the evidence. **FEDERAL RULE OF CRIMINAL PROCEDURE 29(a)** provides that upon a motion for acquittal, "the court . . . must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The Seventh Circuit has analyzed this question by asking "whether the evidence presented, when viewed in the light most favorable to the government, could support any rational trier of fact's finding of all the essential elements of the crime beyond a reasonable doubt." *United States v. Alhalabi*, **443 F.3d 605, 613 (7th Cir. 2006) (quoting** *United States v. Brown*, **328 F.3d 352, 355 (7th Cir. 2003)).**

For the reasons sufficiently stated above in Section 4, it is clear that a rational trier of fact could have found that Hatfield committed the essential elements of the crime beyond a

reasonable doubt. Therefore, a new trial is not warranted.

6. Violation of *Brady v. Maryland*

Finally, the Defendant argues that the prosecution violated ***Brady v. Maryland*, 373 U.S. 83 (1963)**, because it did not disclose all information about Rex Hatfield's service as an FBI informant. During the trial, the Government introduced a videotaped statement made by the Defendant, wherein he claimed that the 2002 Sevierville, Tennessee burglary for which he was arrested was undertaken in connection with Rex Hatfield's informant activities. Later, DEA Agent Ralph Moore testified that he corroborated that Rex Hatfield served as an FBI informant during the early 1980s, was deemed unreliable, was prosecuted, and was never reactivated. The Defendant now argues that had the Government turned over more information with respect to Rex Hatfield's informant activities, he may have been able to establish a public authority defense.

The Government provides the Court with two documents that it produced during discovery. The first document is a March 17, 2005 investigation report prepared by Agent Moore summarizing an interview with Phillip Stafford. **Doc. 98-2.** The report states that Stafford claimed that he and Rex Hatfield previously served as confidential sources for the FBI and named the FBI agent with whom they worked. *Id.* The report also states that Stafford claimed Rex Hatfield served as a source for the West Virginia State Police and named the officers with whom he worked. *Id.* The second document is an investigation report prepared on March 15, 2005 by the DEA. **Doc. 98-3.** The report states that Norman Ray Cline told the DEA that Rex Hatfield previously claimed to be a confidential informant for the FBI. *Id.*

The question here is whether the Government fully satisfied its obligations under *Brady* by turning over these documents. In *Brady*, the defendant was charged with first degree

murder. **373 U.S. at 84.** Prior to trial, the defendant requested copies of all statements made by his co-defendant. *Id.* The government failed to turn over a statement wherein the co-defendant admitted to the crime, and the statement did not come to light until after Brady's conviction was affirmed on appeal. *Id.* The Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* **at 87.**

Before Hatfield would be entitled to a new trial, he must establish: "(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." ***United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (quoting *United States v. Silva*, 71 F.3d 667, 670 (7th Cir.1995)).** Hatfield has not satisfied this burden.

First, the Government did not suppress information with respect to Rex Hatfield's former status as a confidential source. Rather, the Government produced statements obtained by Agent Moore that directly referred to Rex Hatfield's service with the FBI and the West Virginia State Police. **Docs. 98-2, 98-3.** Defendant Hatfield argues that these documents were insufficient, because they were merely reports that included statements by lay persons rather than government officials. As such, the Defendant essentially argues that he was deprived of the prosecution's *confirmation* that Rex Hatfield was an FBI informant in the early 1980s, the only additional information adduced at trial.

This argument is unconvincing. The Government provided the Defendant with information that Rex Hatfield had been an FBI informant, along with the name of the FBI agent with

whom he had worked. Additionally, the Defendant himself claimed in a videotaped statement that he believed Rex may have been a confidential informant. Nonetheless, defense counsel sought no additional information on the matter, even after the Government turned over Agent Moore's investigation reports. As the Seventh Circuit explained in *Morris*, "the government will not be found to have suppressed material information if that information also was available to a defendant through the exercise of reasonable diligence." **80 F.3d at 1170.** There is no allegation that defense counsel sought additional information and was denied. As a result, Defendant Hatfield has failed to show that the Government suppressed any information.

Additionally, even if the Government had suppressed the information, there is nothing to indicate that the evidence was material to any issue at trial. The testimony of Agent Moore was that Rex Hatfield was an informant for the FBI during a brief period in the early 1980s, approximately twenty years before the conspiracy alleged by the indictment. Agent Moore stated that Rex Hatfield's service was minimal, and that the FBI deemed him unreliable and never used him again. There was no testimony from Agent Moore or any other witness that Rex Hatfield was a confidential informant at any time during the conspiracy.

Consequently, the Court is unable determine the relevance of these facts to Hatfield's defense, save for the loose connection they bear to his claim that he participated in the Sevierville burglary under the belief that he was helping Rex Hatfield in a police investigation. There is nothing to indicate that the Defendant's belief was based on Rex Hatfield's *actual* status as an FBI informant, because there is no evidence that Rex Hatfield *was* an FBI informant at any point during the conspiracy. In defense counsel's questioning of Agent Moore, however, it was suggested that Rex Hatfield may have had a reputation in the community as being an informant. These matters

could have been explored with any of the witnesses that knew Rex Hatfield. In any event, it is not clear how Rex Hatfield's short-lived status as an FBI informant in the early 1980s was relevant to any issue at trial.

Consequently, the Court is unable to find that the prosecution violated *Brady v. Maryland*, and a new trial cannot be granted.

### C. Conclusion

Hatfield has presented no ground meriting a new trial under Rule 33. For all the above-described reasons, the Court **DENIES** his motion for new trial (Doc. 94).

**IT IS SO ORDERED.**

**DATED this 22nd day of January 2008.**

<u>s/ Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**United States District Judge**